UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re                                                    Chapter 7
Tina M. Dahle-Fenske,                                    Case No. 14-22521-svk
       Debtor.

Jane C. Kelley,
       Plaintiff,
v.                                                       Adv. No. 14-2309

Tina M. Dahle-Fenske,
       Defendant.

## MEMORANDUM DECISION

This case involves the elusive "phantom discharge" that a spouse in a community property state can receive without filing bankruptcy.[1] Wisconsin is a community property state, and the twist here is that the spouses filed Chapter 7 bankruptcies at different times. The second spouse to file is now trying to claim the benefit of the discharge in her spouse's case.

### Background and Procedural Status

Tina M. Dahle-Fenske (the "Debtor") filed a Chapter 7 petition on March 13, 2014. On June 16, 2014, Jane C. Kelley ("Kelley") filed an adversary complaint objecting to the dischargeability of the Debtor's debt under 11 U.S.C. § 523(a)(2) and (a)(4). (Adv. No. 14-2309, Docket No. 1.)[2] The Debtor moved to dismiss the complaint, based on the phantom discharge in the prior Chapter 7 bankruptcy of the Debtor's husband, Trevor A. Fenske ("Fenske"). (Docket

---

[1] The Bankruptcy Code does not use the term "phantom discharge" when referring to the community property discharge available when only one spouse files bankruptcy in a community property state. But the parties have used that term, and the Court will as well.

[2] All references are to the CM/ECF docket in the adversary proceeding unless otherwise indicated.

No. 4.)  The Court held a hearing on July 29, 2014, determined that the issue could not be decided without further evidence and scheduled a trial for February 20, 2015.

The parties later filed a stipulation agreeing to the entry of a nondischargeable judgment against the Debtor in the amount of $396,476.52, consisting of $300,000 in principal and $96,476.52 in interest.  (Docket No. 15.)  The parties asked the Court to use the February 20, 2015 trial date to decide two legal issues unresolved by the stipulation:  (1) whether Kelley is entitled to recover legal fees that she incurred attempting to collect the debt; and (2) whether 11 U.S.C. §§ 524 and 727 prevent Kelley from collecting the judgment from the post-petition marital property of the Debtor and Fenske.  The parties filed briefs and affidavits in support of their positions.  (Docket Nos. 18, 19, 20, 21, 22.)

## Facts

The briefs, affidavits and the Decision of the U.S. District Court for the Eastern District of Wisconsin provide the factual background.  *See Kelley v. Dahle*, No. 11-C-600, 2012 U.S. Dist. LEXIS 104111 (E.D. Wis. July 26, 2012) ("District Ct. Dec.").  The Debtor was an attorney who represented Kelley in various business matters between 2004 and 2009.  (Docket Nos. 20 at 2; 22 at 1.)  The Debtor solicited a loan from Kelley after Kelley revealed her financial picture in connection with Kelley's attempt to refinance her mortgage to a lower interest rate.  (Docket No. 22 at 2.)  According to the District Court, on July 28, 2009, the Debtor sent Kelley an email proposing that the loan would be documented by a promissory note and secured by a mortgage.  (District Ct. Dec. at *4.)  Kelley advanced $300,000 to the Debtor in October 2009, but the loan was not documented by a promissory note.  (*Id.* at *5.)  In August 2010, the parties met to discuss the interest rate and the terms of the loan.  (*Id.* at *6.)  They eventually agreed on an interest rate of 6.5%, and Kelley was to receive monthly credits against the attorneys' fees she

2

had incurred dating back to November 2009. (*Id*.) The Debtor agreed to begin making monthly cash payments to Kelley in November 2010. (*Id*.) The Debtor prepared a promissory note documenting these terms and signed it, backdating it to October 2009. (*Id*.; Docket No. 18-1 at 3.)

The note provides that in the event of a default, "Holder reserves the right to commence legal action for all unpaid principal, together with costs, reasonable attorneys' fees and disbursements, after the date of such default, without further prior notice of any kind." (Docket No. 18-1 at 3.) The Debtor failed to make any payments on the note. (Docket No. 18 at 2.)

On June 21, 2011, Kelley filed a lawsuit for breach of contract and breach of fiduciary duty against the Debtor, her former law firm, and her malpractice insurer. (District Ct. Dec. at *1.) On July 26, 2012, the District Court granted the insurer's motion for summary judgment, finding that the obligation owed by the Debtor to Kelley did not constitute "damages" covered by the Debtor's insurance policy. (District Ct. Dec. at *14.) On December 12, 2013, the District Court entered a default judgment against the Debtor, after she failed to answer an amended complaint. (Docket No. 18 at 2.)

On July 3, 2013, Fenske filed a Chapter 7 case, listing the Debtor as his "non-filing spouse." (Case No. 13-29119-svk, Docket No. 1.) Kelley's loan was not mentioned in Fenske's schedules nor was Kelley listed on the creditor matrix. (*Id*.) The Court entered an order granting Fenske a discharge on December 31, 2013.

Prior to March 13, 2014, Kelley incurred $73,559.79 in legal fees and costs pursuing the District Court action against the Debtor, and she incurred $18,797.69 in legal fees and costs since the Debtor filed her Chapter 7 case. (Docket No. 18-1 at 2.)

3

## Issues

**I.       Allowance of legal fees as part of the nondischargeable judgment**

Twenty years ago, the Seventh Circuit Court of Appeals held: "Attorneys' fees provided by contract are part of the debt, and if the principal and (pre-bankruptcy) interest on the debt are non-dischargeable, so are the other elements of the debt." *Mayer v. Spanel Int'l*, 51 F.3d 670, 677 (7th Cir. 1995). The court reasoned that if a debtor agrees in a valid contract to pay legal expenses, those expenses are no different than the other contractual terms and can be part of the nondischargeable judgment. *Id*.

In this case, the Debtor drafted and signed a promissory note that expressly provides for attorneys' fees and costs in the event of default. The note states: "Holder reserves the right to commence legal action or all unpaid principal, together with costs, reasonable attorneys' fees and disbursements, after the date of such default, without further prior notice of any kind." (Docket No. 18-1 at 3.) The Debtor was a practicing attorney at the time she signed the note, and Kelley urges this Court to enforce the contract as negotiated and signed – including the provision that requires the Debtor to reimburse Kelley for all reasonable attorneys' fees upon default. (Docket No. 18 at 4.)

The Debtor responds that when Kelley loaned her the money, Kelley did not negotiate, bargain for or expect a possible attorneys' fee award in the event of a default. (Docket No. 19 at 6-7.) At the time Kelley made the loan, there was no written contract. Instead, the contract was drafted more than a year later and backdated. Thus, according to the Debtor, the default had already occurred and the damage had already been done, so the written contract providing for attorneys' fees "should not be applicable in this case." (*Id.* at 7.) The Debtor cites no case law

4

to support her argument, and the Court rejects it.  The Debtor drafted the promissory note, which provided for reasonable attorneys' fees on default.  The attorneys' fees provision, like the rest of the promissory note, would be enforceable under Wisconsin law, even though the note was drafted after Kelley advanced the money.  Therefore, under *Mayer*, the attorneys' fees award is properly included in the nondischargeable judgment.

The Debtor's second argument challenges the amount of the attorneys' fees.  Specifically, the Debtor questions the reasonableness of the fees incurred in suing the Debtor's malpractice insurer.  She contends that she admitted every fact so that Kelley could easily prevail against her in the District Court action, and she tried to advise Kelley's counsel that the complaint against the insurance company was unlikely to succeed.  (Docket No. 19 at 4.)  Kelley's attorney failed to heed these warnings and proceeded with the case, resulting in summary judgment in favor of the insurer and a failed appeal to the Seventh Circuit.  (*Id*.)  Kelley's unsuccessful efforts cost over $90,000 in attorneys' fees.  The Debtor contends that only about $1,000 of legal fees were reasonable under the circumstances.  (Docket No. 19 at 8.)

Kelley does not specifically address the reasonableness of the attorneys' fees in her briefs, but she notes that if the Court determines that Kelley is entitled to reimbursement of attorneys' fees, she intends to file a motion itemizing the fees to allow the Debtor to challenge the reasonableness (as opposed to the recoverability) of the fees.  (Docket No. 21 at 3.)  The Court concludes that Kelley is entitled to reasonable attorneys' fees as part of the nondischargeable judgment, but that a separate determination of the allowable amount of the fees is necessary.

5

## II. Recovery of the judgment from post-petition marital property assets

The remaining question is whether Kelley can collect her judgment from the post-petition marital property of the Debtor and Fenske. The Debtor maintains that 11 U.S.C. § 524(a)(3) limits Kelley to recovery solely from the Debtor's individual property. Under § 524(a)(3), a discharge enjoins collection efforts against the interests of the debtor and the debtor's spouse in post-petition community property, "on account of a community claim, except a community claim that is excepted from discharge under § 523 . . . or that would be so excepted, determined in accordance with the provisions of §§ 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor . . ."

### A. The claim is a community claim

The Debtor argues that Kelley's judgment cannot reach her community property because the debt was not incurred in the interest of the marriage or family and therefore is not a "community claim" as defined by § 101(7). (Docket No. 19 at 9.) The Debtor fails to cite any authority for her position, and in fact, applicable law provides presumptions that compel the rejection of the Debtor's argument.

The Bankruptcy Code defines community claim by reference to the property that is liable for the claim. Under §101(7) a community claim is a pre-petition claim "for which property of the kind specified in § 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case." Under this definition, if § 541(a)(2) property could be liable for the claim, the claim is a community claim, even if no such property exists. Section 541(a)(2) property includes "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—(A) under the sole, equal, or joint

6

management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."

Wisconsin law creates a clear presumption that an obligation incurred during marriage is a community debt for which community property is liable. First, under Wis. Stat. § 766.55(1), "[a]n obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, is presumed to be incurred in the interest of the marriage or the family." The Debtor has advanced no evidence to rebut this presumption. This alone is fatal to her argument. *See Schmidt v. Waukesha State Bank*, 555 N.W.2d 655, 661-62 (Wis. Ct. App. 1996) (Spouse asserting that debt was not in interest of marriage or family bears burden of proof by a preponderance of the evidence). The Debtor claims that since Fenske was not aware of the debt, the debt was not in the interest of the marriage or family. (Docket No. 19 at 2, 9.) But under Wisconsin marital property law, spouses acting alone can enter into credit transactions impacting marital property over which they have rights of management and control. Keith A. Christiansen et al., *Marital Property Law in Wisconsin* § 5.15 (4th ed. 2010).

Specifically, under Wis. Stat. § 766.51(1m), "for the purpose of obtaining an extension of credit for an obligation described under § 766.55(2)(b), a spouse acting alone may manage and control all of the marital property." Thus, Fenske's alleged lack of knowledge about the Debtor's debt to Kelley is insufficient to overcome the presumption that the debt was incurred in the interest of the marriage or family. *See Park Bank-W. v. Mueller*, 444 N.W.2d 754 (Wis. Ct. App. 1989) (Bank was entitled to collect from marital property even though wife was unaware of loan and Bank failed to give notice to wife under § 766.56(3)(b)).

7

Under Wis. Stat. § 766.55(2)(b), an obligation incurred in the interest of the marriage or family "may be satisfied only from all marital property and all other property of the incurring spouse." As a result, all obligations under § 766.55(2), whether incurred by the debtor or the nondebtor spouse, satisfy the definition of "community claim" under § 101(7). *Marital Property Law in Wisconsin*, *supra*, at § 6.96. Under the applicable presumptions, and given the lack of any evidence to the contrary, the Court rejects the Debtor's argument that the debt to Kelley was not incurred in the interest of the marriage or family.

In sum, Kelley's claim is a community claim because: (1) the Debtor and Fenske were married when the Debtor incurred the debt to Kelley; (2) the debt is presumed to be incurred in the interest of Kelley and Fenske's marriage or family, and the Debtor has not rebutted the presumption; and (3) such a debt could be satisfied from Fenske's interest in community property.

**B. By operation of §§ 524(a)(3) and 523(c), the claim is not included in the phantom discharge**

The Debtor next argues that Kelley cannot satisfy her claim from post-petition marital property because when Fenske received his discharge on December 31, 2013, the Debtor qualified for the "phantom discharge" of § 524(a)(3). (Docket No. 19 at 10.) Kelley responds that the phantom discharge does not apply because the Debtor's debt to Kelley is nondischargeable under § 523. She points to the language of the statute that says the discharge applies to all community claims "except a community claim that is excepted from discharge under § 523." (Docket No. 18 at 5.)

Kelley's argument ignores the next clause of § 524(a)(3) that dischargeability is to be "determined in accordance with the provisions of §§ 523(c) and 523(d)." Section 523(c) requires creditors to affirmatively seek a determination of the dischargeability of certain kinds of debts or

8

they will be discharged. Kelley's complaint alleges fraud and fraud in a fiduciary capacity, which are among the categories included in § 523(c). Bankruptcy Rule 4007(c) imposes a deadline -- 60 days after the meeting of creditors -- for filing a complaint under § 523(c). However, simply because a debt fits within the categories listed in § 523(c) and the 60-day period has run does not end the inquiry. Section 523(c) refers to § 523(a)(3)(B) which specifies that if a creditor's claim is not listed or scheduled in the debtor's bankruptcy in time to permit the creditor to file a timely request for a determination of dischargeability, the debt is not discharged, unless the creditor had notice or actual knowledge of the case in time to file a complaint.

This Court reviewed § 523(a)(3)(B) in *In re Guseck*, 310 B.R. 400, 404 (Bankr. E.D. Wis. 2004), and noted that an unscheduled fraud debt will not be discharged if the creditor did not have notice or actual knowledge of the bankruptcy in time to file a complaint to determine the dischargeability of the debt. In *Guseck,* the Court quoted Lauren A. Helbling and The Hon. Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts*, 69 Am. Bankr. L.J. 33, 44 (Winter 1995): "Without the type of special accommodation for omitted debts found at § 523(a)(3)(B), a crafty debtor who has defrauded a creditor could work a second fraud by omitting the debt from the schedules until after the deadline for contesting dischargeability."

By inserting § 523(c) (which incorporates § 523(a)(3)) into the phantom discharge provision, a <u>scheduled</u> creditor with a fraud claim against a non-filing spouse must comply with the 60-day deadline for filing a nondischargeability complaint, or the debt will not be collectible from post-petition community property. Most courts and commentators agree that the 60-day deadline applies to community discharge claims: "[C]omplaints to determine the

9

nondischargeability of an obligation of the debtor or of an obligation of the nondebtor spouse in a hypothetical case commenced by such spouse must be filed within the time period set forth in Federal Rule of Bankruptcy Procedure 4007(c). Consequently, creditors must act diligently with respect to both the debtor and the nondebtor spouse to preserve their rights as to the discharge or dischargeability of their claims." *In re Kimmel*, 367 B.R. 174, 181 (Bankr. N.D. Cal. 2007) (quoting Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[3][b] and [c] (16th ed.)). In *Gonzales v. Costanza*, 151 B.R. 588, 589 n.3 (Bankr. D.N.M. 1993) (citing *In re Karber*, 25 B.R. 9, 12 (Bankr. N.D. Tex. 1982)), the court "expresse[d] no opinion concerning whether the sixty-day time limit to object to the dischargeability of a debt, specified in Fed. Bankr. R. 4007(c) applies to hypothetical cases against the nondebtor spouse. One opinion has suggested that a creditor must file a hypothetical discharge [sic] against a nondebtor spouse within the sixty days."

The plaintiffs in *Gonzales* were either scheduled creditors or had actual knowledge of the bankruptcy in time to file dischargeability complaints. *Id.* Similarly, in *Karber,* the court stated: "It was the duty of the scheduled creditors in the Braden Jay Karber bankruptcy proceedings to object to the hypothetical discharge of Valerie Karber, as the nondebtor spouse, within the same time limits as their objections to the discharge of Braden Jay Karber. No such objections were filed and thus all community creditors before the Court in that case are now barred from seeking to collect their deficiencies from the after acquired community property of either Braden Jay Karber or Valerie Karber." *Karber*, 25 B.R. at 12 (internal citations omitted; emphasis supplied). *See also In re Schmiedel*, 236 B.R. 393, 396 (Bankr. E.D. Wis. 1999) ("If a creditor has a claim against the nonfiling spouse that might have been excepted from the discharge if the nonfiling spouse were a debtor in bankruptcy, it is the duty of scheduled creditors to object to the

10

hypothetical discharge of the nondebtor spouse, within the time limits set by the bankruptcy code." (emphasis supplied)).

Conversely, when the creditor is not scheduled, and the creditor does not have actual knowledge of the deadline in time to file a complaint, the phantom discharge does not apply. In *In re Sweitzer*, 111 B.R. 792, 797 (Bankr. E.D. Wis. 1990), the court recognized that "significant notice concerns remain, where, as here, discharge of the debtor would be said to operate as a discharge of a non-debtor third party, the debtor's spouse." In *Sweitzer*, the debtor's non-filing spouse was not listed on the petition, so there was no way for the creditor to know about the potential for the phantom discharge. *Id.* at 799. The lack of notice was harmless because there was no suggestion that the creditor had a potentially nondischargeable claim. *Id.* In *Schmiedel*, the debtor also did not list the non-filing spouse on her bankruptcy petition, but the creditors were listed in her schedules, as the creditors had sued the debtor and her non-filing spouse prior to the petition. 236 B.R. at 397. The court concluded that the creditors had sufficient notice and were bound by the discharge.

In this case, although Fenske listed the Debtor as his non-filing spouse, he did not include Kelley on his list of creditors, and he did not list the District Court action in his schedule of pending law suits. (Case No. 13-29119-svk, Docket No. 1.) The Debtor's affidavit states that "[u]pon information and belief, Jane C. Kelley and her attorney's [sic] received actual knowledge of my husband Trevor Fenske's bankruptcy on or before July 10, 2013," but this unsupported allegation is insufficient to comply with due process requirements. (Docket No. 20 at 4.) If Fenske, the Debtor or one of their attorneys told Kelley or her attorneys about the deadline, presumably the Debtor would be able to unequivocally state that.

11

The Seventh Circuit Court of Appeals analyzed the dischargeability complaint deadline notice requirements in *Tidwell v. Smith (In re Smith)*, 582 F.3d 767, 774 (7th Cir. 2009): "[D]ue process entitled the plaintiffs to reasonable notice. . . . that meant notice which alerted the plaintiffs to key deadlines in time enough for them to take action in compliance with those deadlines." In *Smith*, the court of appeals concluded that notice of the bankruptcy sixteen days before the deadline was insufficient. Here, while the Debtor alleges "on information and belief" that Kelley knew about Fenske's bankruptcy before the deadline, there is no evidence that Fenske or the Debtor alerted Kelley to the key deadline itself or to its implications. To the contrary, while the deadline approached, Kelley and the Debtor were actively litigating in the District Court action. The Debtor never advised Kelley or the District Court of the pending bankruptcy, never amended her Answer to plead the phantom discharge as a defense, never sought a stay or other remedy and "sat silent until Fenske received his discharge, only then claiming the benefit of the Phantom Discharge as to her." (Docket No. 18 at 9.) Under the circumstances, Kelley should not be bound by the 60-day deadline to object to the phantom discharge in Fenske's case. Like the unscheduled creditors in *Guseck* and *Smith*, Fenske's failure to schedule Kelley's debt or to provide timely notice of the key deadline to object to the hypothetical discharge, relieves Kelley of the deadline. Now that the Debtor has filed her own bankruptcy case, Kelley can proceed to determine the nondischargeability of the debt.

If Kelley's debt had been scheduled in Fenske's bankruptcy case, the result would be different. Kelley overlooks the statutory reference to § 523(c), and suggests that any time a nonfiling spouse has a nondischargeable debt, the phantom discharge does not apply to discharge the community property. But the cases cited by Kelley are readily distinguishable. In *In re LeSueur*, 53 B.R. 414 (Bankr. D. Ariz. 1985), the debtors filed a joint case, and the creditor filed

12

a timely nondischargeability complaint. Although the complaint was dismissed as to the wife because she had not participated in the fraud, the determination of nondischargeability of the husband's debt allowed the creditor to proceed against the community property. The court concluded that "the Code's clear policy is that the economic sins of either spouse shall be visited upon the community when a discharge is denied." *Id.* at 416.

Kelley's citation to *Trimble v. Leeuw (In re Leeuw)*, No. 11-32065, 2012 Bankr. LEXIS 2318 (Bankr. N.D. Tex. May 22, 2012), is similarly distinguishable. In that case, the court held that one spouse's discharge did not prevent creditors from proceeding against after-acquired community property where the other spouse has been denied a discharge of the same debt. The Bankruptcy Code prevents wrongdoers from "hiding behind" their innocent spouse's discharge. *Id.* at *21. As in *LeSueur*, the creditor had filed a timely nondischargeability complaint in the first spouse's bankruptcy.

Kelley also cites *Midi Music Ctr., Inc. v. Smith*, 140 B.R. 904 (Bankr. D.N.M. 1992), a case involving multiple bankruptcies by the spouses. First, the wrongdoing wife filed a Chapter 13 bankruptcy, which was dismissed. Prior to the dismissal, the innocent husband filed a Chapter 7 bankruptcy. The wrongdoing wife filed another Chapter 13 petition, which was ultimately converted to a Chapter 7. While the wrongdoing wife's Chapter 13 case was still pending, the creditor filed a complaint to determine dischargeability in the innocent husband's Chapter 7 case. The court concluded that the creditor's strategy was to circumvent the (at that time) broader discharge provisions in Chapter 13. The court dismissed the complaint in the innocent husband's case, but allowed the creditor to file a complaint in the wrongdoing wife's case.

13

The *Midi Music* court's rationale does not apply here. Kelley did not file a timely complaint in Fenske's case, like the creditor in *Midi Music*. And Fenske's and the Debtor's cases did not overlap as they did in *Midi Music*. In short, while *Midi Music*, *Leeuw* and *LeSueur* support the notion that the community property interest of an innocent spouse will suffer due to the wrongdoing of the other spouse, these cases also require a creditor to be vigilant in protecting itself against the phantom discharge. Here, Fenske did not schedule Kelley as a creditor, and neither the Debtor nor Fenske alerted her to the deadline to object to the hypothetical discharge in Fenske's case. Therefore, she was not bound by the deadline.

## **Conclusion**

Kelley is entitled to reasonable attorneys' fees as part of her judgment, and Kelley can collect her judgment from the post-petition community property interests of the Debtor and Fenske. If the parties are unable to agree on the amount of attorneys' fees, Kelley should file a motion with the supporting invoices; the Debtor may file a detailed objection, and the Court will decide the amount of reasonable attorneys' fees that may be added to the judgment.

Dated: March 2, 2015

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge